IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>         Plaintiff,<br>v.<br>DAVID TATUM,<br>         Defendant. | Docket No. 3:22-cr-157-KDB<br><br>MOTION TO SUPPRESS EVIDENCE<br>AND REQUEST FOR<br>EVIDENTIARY HEARING |

## MOTION TO SUPPRESS EVIDENCE

The Defendant, David Tatum, by and through his counsel of record, Ryan Ames, respectfully moves, pursuant to the Fourth Amendment to the U.S. Constitution and Fed. R. Crim. P. 12, to suppress as evidence any property, statement, or electronically stored data obtained by the Government in this matter as the result of illegal searches, seizures, or arrests, as well as any subsequent statements or evidence resulting from any such Fourth Amendment violation.

The Defendant further requests an evidentiary hearing on these matters.

### I.    FACTUAL BACKGROUND

In August of 2021, Kimberly Tatum (the Defendant's wife) reportedly observed several concerning images in a folder on the desktop of a MacBook laptop computer, which the couple jointly uses. According to Kimberly, the images purportedly showed young girls depicted both clothed and unclothed, as well as images of ex-girlfriends and other acquaintances of David Tatum both fully clothed and unclothed.

1

Kimberly also stated that she observed a browser window open for a website called "www.deepsukebe.io/en/." This website is described as an "AI-Leveraged Nudifier" and claims the capability to generate "deepfake" nude images of women from a clothed photograph. It was surmised that the clothed and unclothed images on the MacBook had been run through this "nudifier" model.

In order to document what she found in August of 2021, Kimberly reported that she used her iPhone to take a number of photographs and videos of the MacBook's computer screen.

Roughly five or six weeks later, on or about September 21st, 2021, FBI Supervisor Special Agent Kevin Swanson received a report about these images and Kimberly's willingness to discuss the information with the FBI with her attorney present. This resulted in a meeting between Kimberly and FBI agents at her lawyer's office on the following morning, September 22nd, 2021.

Participants of this meeting included agents Scott Atwood and Marisa Brown. Kimberly Tatum told the agents that after taking photos and videos of the MacBook screen, she forwarded a number of these images to her personal email account for safekeeping, and also transferred them to a flash drive. Kimberly turned over a flash drive to the FBI at the September 22nd meeting.

In addition to the flash drive, Kimberly turned over six other electronic devices purported to belong to David Tatum. This included a total of four iPhones previously used by David and two external hard drives. One of these drives, a "WD My Passport" was password protected. The other, a "Seagate Backup Plus 4TB External Drive" did

not have a password. See "Exhibit H (USA 1133-11136)."

Kimberly also told the FBI that she had installed a Spyware system on the MacBook laptop called "teamviewer" but was not able to get it to work.

According to the Warrant, Agent Atwood reviewed Kimberly's flash drive on September 22nd. He confirmed that it contained videos and images of a laptop computer screen, and that the images on the screen were of women or girls both clothed and "nudified".

Later that evening, Agents Brown and Atwood approached David Tatum in a parking garage near his place of employment. The agents performed a voluntary search of David's vehicle and had a lengthy discussion, which the agents deemed to be voluntary and non-custodial. During this interview, David acknowledged his use of a "deepfake" website. At the conclusion of the interview, the agents seized a number of electronic devices from David without his consent. This included the MacBook laptop, as well as a flash drive labeled "Medical College of Wisconsin" that was in the shape of a key.

Throughout the interview, David made repeated attempts on his phone to contact both Kimberly and his father-in-law, Michael Martin. David was particularly adamant about wishing to speak with his father-in-law, as Mr. Martin had previously worked in federal law enforcement. David's calls and messages went unanswered, although Kimberly did at one point respond to David that she had been instructed not to speak with him.

3

Case 3:22-cr-00157-KDB-DCK   Document 41   Filed 04/24/23   Page 3 of 17

While this interview of David Tatum occurred, other agents simultaneously went to the home of Kimberly and David to conduct a "consensual search of the residence". Agent Atwood contacted Kimberly Tatum at approximately 5:30 PM to inform her that agents would meet her shortly. These agents arrived at the residence at approximately 6:28 PM. Both Kimberly and her father Michael Martin were present. Kimberly Tatum assisted law enforcement in "identifying common areas" which "may contain digital storage devices". The agents seized several thumb drives and an HP Pavilion desktop computer located in a home office, as well as an iPad from an upstairs bedroom.

Agent Atwood secured a search warrant for all the seized devices on September 30th, 2021. The affidavit in support of the warrant relied generally upon information derived from the interview with Kimberly Tatum on the morning of September 22nd, a review of the flash drive she provided that same morning, and the resulting discussion with David Tatum that evening outside his work later that evening.

After a subsequent search and forensic analysis of the seized devices, David Tatum was indicted on June 21st, 2022, for one count of Possession of Child Pornography under Title 18 US Code, Section 2252(A)(5)(B). Some months later on November 15th, 2022, a superseding indictment alleged one count of Possession of Child Pornography, one count of Production of Sexually Explicit Content under Title 18 US Code 2251(a), and one count of Transporting Child Pornography under Title 18 US Code 2252A(a)(1).

Within the Government's first production of discovery documents to the Defense, a short and seemingly innocuous evidence record was submitted by Agent Atwood:

> *"On 09/23/2021 at approximately 5:30 PM EST, FBI Fayetteville Supervisory Senior Resident Agent (SSRA) Ryan Schmidt seized a SanDisk USB 3.0 flash drive from Courtney Martin, 435 Gun Club Drive, Pinehurst, North Carolina 28374. SSRA Schmidt maintained control of the flash drive until it was mailed to FBI Charlotte on 09/27/2021. Writer obtained possession of referenced flash drive on 09/30/2021 at approximately 1:00 PM EST.*
>
> *Referenced flash drive was entered into evidence and assigned item number 1B19."* See "Exhibit G (USA 1137)."

Courtney Martin is the sister of Kimberly Tatum, and the sister-in-law of David Tatum. This seizure of a flash drive on September 23rd, 2021, was the one and only time the Government noted any contact with Courtney Martin in relation to the investigation of David Tatum.

That is, until Tuesday April 18th, 2023. The following is a summary of the events and disclosures by the Government throughout the pendency of this case, culminating in the recent disclosures that prompted the present Motion to Suppress:

1. The Government seized a flash drive from Courtney Martin on September 23rd, 2021. This was the day after the FBI first met with Kimberly and David Tatum. No details about the circumstances of the seizure nor the contents of this flash drive were provided.

2. At the time this flash drive was seized from Courtney Martin, she was employed by the FBI. Courtney worked for the Charlotte division in its Fayetteville branch.

3. The device was seized by Supervisory Senior Resident Agent (SSRA) Jonathan Schmidt. According to discovery documents, Agent Schmidt placed the device in the mail to the Charlotte Field Office on September 27th, 2021.

5

4. Agent Atwood obtained possession of the flash drive on September 30th, 2021 at approximately 1:00 PM. The initial search warrant for the devices was signed that day at 2:24 PM.

5. The Defendant hired a forensic analyst to assist in making copies of electronically stored data held in FBI custody so that the Defense could review these items in greater detail. In December of 2022 the Defense requested to review a number of devices, which included both the flash drive provided by Kimberly (Evidence Item 1B18) as well as the flash drive seized from Courtney Martin (Evidence Item 1B19).

6. Counsel for the Defendant and the hired forensic analyst traveled to the FBI Field Office in Charlotte to begin the process of reviewing these items on January 27, 2023. Copies of relevant data were transferred to Defense Counsel in early February.

7. The data from Courtney Martin's flash drive (Item 1B19) included copies of each picture, video, and pdf document turned over to the FBI by Kimberly Tatum on the flash drive she provided at the initial meeting on September 22, 2021. It also included some additional items.

8. On March 10th, 2023, Defense Counsel requested redacted copies of the PDF documents located on each flash drive. These documents were produced to the defense on March 20th, 2023.

9. The documents on each of these devices include emails (saved in PDF format) that were sent by Kimberly Tatum to her father Michael Martin in August of 2021. The emails included attached copies of the videos and images taken of the MacBook screen by Kimberly Tatum.

10. On March 30th, 2023, the FBI and US Attorney's Office conducted an interview with Kimberly Tatum in which she stated she "made an additional copy of the flash drive she originally gave to FBI agents". This information was not provided to Defense Counsel until April 18th, 2023.

11. On April 10th, 2023, during a meeting at the FBI Charlotte Field Office, Defense Counsel expressed concerns about the lack of information regarding Courtney and Michael Martin, and their possible role in the initial evidence-gathering. It was Defense Counsel's understanding that Michael Martin was formerly employed with the FBI (it was later clarified that he was employed in numerous federal law enforcement capacities, but not specifically the FBI). It was also Defense Counsel's understanding that Courtney Martin was actively

6

employed by the FBI in August and September of 2021, but was now no longer employed with the Government.

12. Defense Counsel inquired as to whether Courtney or Michael Martin had been interviewed regarding the case at any point. Defense Counsel also inquired about any information the Government had about the circumstances surrounding five or six week time period before the incident was reported, the seizure of the flash drive from Courtney Martin, and whether her employment may have been terminated as a result of her possession of the drive.

13. Defense Counsel received a phone call on Monday April 17th, 2023, from the US Attorney's Office. It was confirmed at this time that further discovery production was forthcoming, but in summary, the FBI interviewed Kimberly Tatum as well as Courtney and Michael Martin over the weekend.

14. The US Attorney's Office revealed that Courtney Martin was in fact the person who originally reported this matter to the FBI on or about September 21, 2021. All prior disclosures had indicated that the matter commenced based on information provided by an "FBI Employee".

15. Defense Counsel was also told that while Courtney Martin was in fact employed with the FBI in September of 2021, she subsequently resigned a few months later due to a back injury from May of 2021 that made her lengthy work commute difficult.

16. It was also revealed that Kimberly Tatum had retained some of the same or similar evidence from the 1B18 and 1B19 flash drives on a personal laptop at home. Agents seized this device from her on or about April 15th, 2023.

17. A few hours after this phone call on April 17th, 2023, the US Attorney's Office submitted its "Second Motion in Limine to Exclude Certain Evidence". This pleading included the claim that Kimberly Tatum "made a duplicate copy of the USB drive and gave it to her sister" and that the flash drive seized from Courtney Martin was the copy that Kimberly Tatum "gave to her sister". See "Exhibit C (USA 3229-3231)", "Exhibit E (USA 3219-3220)", "Exhibit F (USA 3221)."

18. This Motion in Limine predated the interview summaries and other documentation that was provided to Defense Counsel the following day, Tuesday April 18th.

19. In the discovery received on April 18th, 2023, it was revealed to Defense Counsel for the first time that in fact at least *four* flash drives were created with copies of this evidence. It was further revealed that Courtney Martin advised Kimberly on obtaining and preserving evidence as well as deleting items from her phone so that David would not find out.

7

20. It was also disclosed that the original version of the flash drive was not turned over to the FBI, but instead smashed by Kimberly Tatum with a hammer.

21. The two flash drives in evidence (1B18 and 1B19) are in fact copies that were created, cultivated, and organized by Michael and Courtney Martin in September of 2021. According to the discovery documents, this was done at Courtney Martin's home and involved the use of Michael Martin's laptop.

22. Any incongruity between the original flash device, which was destroyed with a hammer, and the two copies in the Government's possession is unknown. It is also unclear whether Kimberly Tatum had reviewed or had specific knowledge of the contents of the flash drive she turned over on September 22, 2021. Her involvement in their creation, if any, has not been disclosed.

## II. ISSUES AND LEGAL STANDARDS

### A. The Defendant Requests a *Franks* Hearing

Generally, an accused is "not entitled to challenge the veracity of a facially valid search warrant affidavit." *United States v. Allen*, 631 F.3d 164, 171 (4th Cir. 2011). But in *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978), the Supreme Court determined that there were narrowly defined circumstances when a defendant may attack a search-warrant affidavit. *See also United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990).

A *Franks* inquiry involves two elements. The first is "intentionality" – the defendant must show that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Franks*, 438 U.S. at 155-56. The second element is "materiality" – the defendant must show that "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." *Id.* at 156. Both elements must be

8

shown by a preponderance of the evidence. *Id*. If both elements are met, the search warrant must be voided and the results of the searches excluded. *Id*.

In the context of omissions, the Fourth Circuit Court of Appeals found that "*Franks* protects against omissions that are designed to mislead, or that are made in reckless disregard of whether they would mislead, the magistrate." *Colkley*, 899 F.2d at 301 (internal citations omitted). The demonstration of the omission is considered a "heavy burden." *United States v. Hass*, 986 F.3d 467, 474 (4th Cir. 2021) (citing *United States v. Tate*, 524 F.3d 449, 454-55 (4th Cir. 2008)). As the affiant cannot be required to "include in an affidavit every piece of information gathered" while investigating. *United States v. Lull*, 824 F.3d 109, 115 (4th Cir. 2016) (internal citations omitted); *see also Tate*, 524 F.3d at 455 ("[S]electing facts to include for the demonstration of probable cause must also be a deliberate process of omitting pieces of information.") After a *Franks* hearing regarding the context surrounding the omission, suppression of the evidence is warranted if the defendant demonstrates by a preponderance of the evidence that (1) the affiant's omissions were made intentionally or recklessly; and (2) the omitted evidence is material. *Hass*, 986 F.3d at 474. The Fourth Circuit has also found that "[e]ven if relevant, information is not material unless its inclusion in the affidavit would default probable cause." *United States v. Wharton*, 840 F.3d 163, 168-69 (4th Cir. 2016) (internal citations omitted).

### B. Extrajudicial Searches and Illegal Gathering of Evidence

The Fourth Amendment to the United States Constitution applies to the states

9

through the Fourteenth Amendment (*see Mapp v. Ohio*, 367 U.S. 643, 6 L.Ed.2d 1081, 81 S.Ct. 1684 (1961)), safeguarding the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable search and seizures" and creates the requirement that a warrant to search will not be granted "but upon probable cause, supported by Oath or affirmation . . . " U.S. Const. amend. IV. Searches are reasonable if supported by valid search warrants, and a warrant is valid if supported by probable cause. *See Illinois v. Gates*, 462 U.S. 213, 76 L. #d. 2d 527, 103 S. Ct. 2317 (1983). Probable cause is defined as "a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238.

The Defendant contends that an evidentiary hearing would aid in the determination additional suppression matters relevant to not only to the probable cause underlying the search warrants in this case, but also with respect to other evidence that may be called into question in light of recent disclosures about the origins of this investigation.

### III. ARGUMENT

Defendant contends that the affidavit supporting the September 30th, 2021, application for a search warrant was defective because Agent Scott Atwood either recklessly or purposefully made factual errors and omitted material facts from the Affidavit. The omissions primarily revolve around the involvement of Kimberly's sister, Courtney Martin, who was an active employee of the FBI. These omissions have likewise continued throughout the entirety of the investigation and discovery

10

process in the intervening year and a half since the issuance of the warrant. The facts revealed to Defense Counsel on April 18th, 2023 are significant and problematic, as well as exculpatory and relevant to pretrial suppression challenges.

### A. There is Substantial Evidence that the Warrant Contained Omissions of Facts Material to a Probable Cause Determination

As detailed above, omissions in the warrant affidavit must have been made either with intent to mislead the issuing judicial official, or with reckless disregard of whether it would cause the affidavit to be misleading. *Lull*, 824 F.3d at 115. This can include omissions related to witness credibility, as noted in *Lull*. Additionally, when evidence is illegally obtained by the Government and that fact is omitted and material to probable cause, the warrant should be voided. *Tate*, 524 F.3d 449.

#### a) The Omission Was Intentional or Reckless

On September 30th, 2021, Special Agent Scott Atwood ("Atwood") submitted an Affidavit in Support of an Application Under Rule 41 for a Warrant to Search and Seize (the "Affidavit"). See "Exhibit A (USA 1651-1674)." Based on the Affidavit, a warrant was subsequently issued by United States Magistrate Judge David S. Cayer on September 30th, 2021, at 2:24 p.m. (the "Warrant"). See "Exhibit B (USA 1675-1676)." The Affidavit lacked any information or disclosure of Courtney Martin ("Courtney"), an FBI employee extensively involved in the origins of this case. The involvement of Courtney Martin was not disclosed by the FBI until Tuesday April 18, 2023, in FBI case note 305G-CE-3497511 Serial 163 dated April 17, 2023, written by

11

Special Agent Marisa Brown ("Brown;" "FBI Case Note 163"). See "Exhibit C (USA 3229-3231)."

When comparing the Affidavit to FBI Case Note 163, the first chapter of this saga changes dramatically. In the Affidavit, the timeline generally begins on September 22nd, 2021. The clear impression given is that Kimberly Tatum ("Kimberly") was the sole source of the information, data, and devices that spurred the subsequent FBI investigation, and that her credibility was bolstered by handing over a critical piece of corroborating evidence: a flash drive compiling her searches of David's activities.

Paragraph 10 of the Affidavit states, "Kimberly took photographs and videos of what she observed . . . and copied [them] onto a flash drive. Kimberly then provided the FBI with the flash drive . . . ". Paragraphs 13 through 17 then go on to describe videos and images contained on the drive, purportedly observed, recorded, and compiled by Kimberly in meticulous fashion.

However, in FBI Case Note 163, Agent Brown reveals that the USB Flash Drive was not created by Kimberly, but rather had been compiled and organized by her sister Courtney, an active employee of the Charlotte FBI.

Courtney has an extensive employment history with the FBI, including time in multiple field offices (and in multiple countries) across a variety of positions. Her role as of September of 2021 was reported to be as a Resident Agency Specialist at the Fayetteville Resident Agency of the FBI Charlotte Division.

The new disclosures further indicate that Kimberly called Courtney sometime

12

in August 2021, reported that she had taken some photos and videos of some concerning images on David's computer, and requested that Courtney come stay with her at David and Kimberly's house in Charlotte. After receiving this call, Courtney did not call FBI investigatory personnel or provide information as an informant. Instead, Courtney involved herself in conducting an extrajudicial investigation by advising and directly assisting in the collection of evidence over the course of five or six weeks and several trips to Charlotte.

It is clear from FBI Case Note 163 that Courtney, at a minimum, went to Kimberly's home and assisted in the collection and transfer of videos and images to a flash drive, advised Kimberly about deleting evidence from her cell phone, and maintained custody and control of critical evidence thereafter. Courtney kept this original flash drive (USB 1) in her possession for multiple weeks, and later involved another family member, Michael Martin ("Michael"), who is also former law enforcement. Michael and Courtney worked together to add additional files into the investigation, including emails Michael had received from Kimberly. They then created two new copies of this compilation drive resulting in USB 2 and USB 3.

Michael retained possession of USB 1 and 2 and Courtney retained possession of USB 3. The report further states that Courtney first reported Defendant to the FBI on September 20th or 21st, 2021, by providing information to Special Agent Kevin Swanson ("Swanson").

There is no specific documentation of any interview or information specifically relayed by Courtney. Instead, the first case note by Swanson states that an "FBI

13

employee" was the source of the "referral." See "Exhibit D (USA 733-34)." Swanson also noted that "the identity of the reporting employee has been given to the Agent reviewing the information." This agent was Atwood, who requested the search warrant and submitted his Affidavit shortly after obtaining USB 3 by mail.

The omission was likewise mirrored in the subsequent discovery documents provided to Defense Counsel, where any reference to her is virtually nonexistent and replaced with the moniker of "FBI Employee". It pushes the bounds of credulity to suggest that her omission throughout the pendency of this case is inadvertent or coincidental. Prior to April 18th, 2023 there were no reports of her involvement in any evidence-gathering, despite the fact that a drive containing important evidence was seized from her by the FBI within 24 hours of the FBI's first meeting with Kimberly.

### b) The Facts Omitted Were Material

. These errors and omissions are material to the issuance of the Warrant by United States Magistrate Judge Cayer. The failure to include details about Courtney Martin's involvement and initial report to a supervisor, and instead allowing the inference that Kimberly herself first reported the Defendant to the FBI, is material because it allowed the FBI to avoid the issue of their employee's direct involvement in the case before an on-the-books investigation began. In issuing the warrant, this Court was deprived of relevant information that involved not only the credibility of evidence and witnesses, but also deprived the Court of any inquiry into the admissibility of the evidence itself.

In reality, FBI employee Courtney Martin either directed Kimberly or personally assisted in searches of David's property, collected and maintained evidence, and then cultivated and prepared this evidence for disclosure to law enforcement. She did so all while employed by the same law enforcement agency that sought a warrant for the devices weeks later in an investigation that began because Courtney herself reported it. Not only is this information entirely absent from the search warrant, it remained absent from the discovery process until less than two weeks before trial was to commence.

While the Government will surely maintain the position that this omission is trivial or irrelevant, the underlying information that it obfuscated was highly probative. Further, it should be noted that "when reviewing the probable cause supporting a warrant, a reviewing court must consider only the information presented to the magistrate who issued the warrant." *United States v. Wilhelm*, 80 F.3d 116, 118 (4th Cir. 1996). It is certainly relevant to consider not only the information presented, but also any information omitted that, if known, stands to undermine or upend the totality of the circumstances analysis.

Would it not have been beneficial for the Court to know, prior to signing a warrant, that the flash drive noted in the Affidavit and insinuated to be the original copy created by Kimberly Tatum, was not in fact original nor created by her? And was in fact created by an active FBI employee? And that the original is no longer available because the Government's primary witness at the time smashed it to pieces with a hammer?

15

## IV. CONCLUSION

At the April 20, 2023, Status hearing before this Court, the Government stated that they did not intend to call Kimberly as a witness at trial. Even so, her involvement in providing evidence to the FBI, both before and after an official investigation was underway, is critical in the determination of any potential Fourth Amendment violations. There is also high probability of additional evidence not yet revealed that will aid in the determination of materiality. Where there are "material facts that affect the resolution of" a motion, the "appropriate way to resolve the conflict is by holding an evidentiary hearing." *United States v. Taylor*, 13 F.3d 786, 789 (4th Cir. 1994).

The Defendant contends that these matters relating to both credibility and admissibility are sufficiently material to warrant suppression, and moves this Court to enter an order to this effect. In the alternative, the Defendant contends that an evidentiary hearing is necessary at a minimum to resolve these issues, and requests that one be held.

RESPECTFULLY SUBMITTED, this the 24th day of April, 2023.

s/ Ryan P. Ames
Ryan P. Ames
North Carolina Bar # 49651
SeiferFlatow, PLLC
2319 Crescent Ave.
Charlotte, NC 28207
Telephone: 704-512-0606
Fax: 704-314-0677
Email: ryan@seiferflatow.com

## CERTIFICATE OF SERVICE

I hereby certify that that on this 24th day of April, 2023, the foregoing document was served electronically on the United States through ECF filing.

s/ Ryan P. Ames
Ryan P. Ames