# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CRIMINAL ACTION NO. 3:22-CR-00157-KDB-DCK

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>)<br>) |
| v. | ) **ORDER**<br>) |
| DAVID TATUM, | )<br>) |
| Defendant. | )<br>) |

**THIS MATTER IS BEFORE THE COURT** on the Defendant's Motion to Suppress and Request for a *Franks* hearing, which the United States opposes. (Doc. Nos. 41, 44). The Court has reviewed the Motion, the parties' briefs and exhibits, and other pleadings of record. For the reasons discussed below, the Court will deny the Motion.

## I. FACTUAL BACKGROUND

In August 2021, Kimberly Tatum, the Defendant's wife, allegedly saw several images of young girls (clothed and unclothed), ex-girlfriends, and other acquaintances of the Defendant (clothed and unclothed) in a folder on the desktop of the couple's MacBook computer. *See* Doc. Nos. 41, 44. Kimberly also observed a browser window open for a website called www.deepsukebe.io/en/. This website is an "AI-Leveraged Nudifier" that generates "deepfake" nude images of women from a clothed photograph. *Id*. Unsure of the legality of these images but sure that she wanted a divorce, Kimberly used her iPhone to record the MacBook's computer screen.

Sometime after this initial discovery, Kimberly told her sister, Courtney Martin, and father, Michael Martin, that she had seen nude images of young girls on the couple's computer and wanted

1

a divorce from the Defendant. Courtney was a Resident Agency Specialist in the FBI's Fayetteville Office. Her duties included answering the door, escorting visitors, and coordinating office moves. *See* Doc. No. 44. She had no investigative role and had never received training on criminal investigations. *Id*. Similarly, Michael Martin was a retired criminal special agent. He worked with various federal agencies (but not the FBI) and retired in 2005. Michael never investigated child exploitation matters.

Kimberly emailed the images she had recorded to her father and attempted to install spyware on the MacBook to monitor the Defendant's computer activity. Kimberly also downloaded the recordings to a USB drive and gave it to Courtney to hold on to as an "insurance policy" in the event something happened to the "original" images. Sometime in September, Michael made two copies of the USB drive. Michael also added emails from Kimberly to the duplicate USBs. Courtney then organized the duplicate USBs so that one could be given to Kimberly's divorce attorney.

On September 20, 2021, Kimberly provided her divorce attorney with one of the duplicate USBs. After consultation with a criminal defense attorney, Kimberly's divorce attorney determined that the matter should be reported to law enforcement. Kimberly passed this recommendation onto Courtney, and the same day Courtney called the Federal Bureau of Investigation (FBI) Charlotte Crimes Against Children Supervisor, Kevin Swanson, to report the information.

Two days later, FBI agents met with Kimberly and her attorney. Kimberly handed over one of the duplicate USBs, two hard drives, and several phones. *See* Doc. No.41-1. Courtney and Michael did not attend or otherwise participate in this meeting. The agents reviewed the contents of the USB and determined that the recordings depicted child pornography. *Id*. Acting on that

belief, the FBI agents went to the Defendant's workplace to speak with him. The Defendant agreed to speak with the FBI agents in the parking lot. *Id*. During this conversation the Defendant allegedly admitted that: (1) he and Kimberly shared the MacBook laptop; (2) he would obtain images of teen girls from a website called "teen gallery" and input the image in a "deep fake" website, which would make the girl in the image appear nude; (3) it was possible that a reasonable person might think the girls were under the age of 18; (4) he masturbated to a "deep fake" nude photograph of an ex-girlfriend (who was a minor at the time of the photograph); and (5) he saved these images to zip drives or thumb drives. *See* Doc. No. 41-1, ¶ 20. At the same time as this initial interview, additional agents went to the Defendant's home and received consent from Kimberly for a search of the common areas. *Id*. The agents found an HP computer during this search. *Id*. The next day Courtney turned over the final duplicate USB to Supervisory Senior Resident Agent Ryan Schmidt. *See* Doc. No. 41-7.

On September 30, 2021, FBI Agent Scott Atwood applied for a search warrant for the Defendant's electronic devices. *See* Doc. Nos. 41-1, 41-2. After a subsequent search and forensic analysis of the seized devices, the Defendant was indicted for one count of Possession of Child Pornography under Title 18 U.S.C. Section 2252(A)(5)(B). *See* Doc. No. 3 A superseding indictment was eventually filed that alleged one count of Possession of Child Pornography, one count of Production of Sexually Explicit Content under Title 18 U.S.C. Section 2251(a), and one count of Transporting Child Pornography under Title 18 U.S.C. Section 2252A(a)(1). *See* Doc. No. 19.

## II. DISCUSSION

In his Motion the Defendant asserts two independent grounds for suppression. First, he argues that the evidence relied on as the basis for the probable cause to search the Defendant's

3

electronic devices was obtained through an "illegal extrajudicial investigation" by Courtney Martin. Second, the Defendant argues that suppression is warranted under *Franks* because the omission of Courtney Martin's role in the search warrant affidavit was either reckless or intentional, and it was material to the totality of the circumstances determination for probable cause. *See* Doc. Nos. 41, 45. The Court will address each argument in turn.[1]

   a) "Extrajudicial Search" by Courtney Martin

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures ... and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. It is well-settled that Fourth Amendment protection extends to a person's electronically stored files, data, email attachments, and the like. *See Kyllo v. United States*, 533 U.S. 27, 33, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001) (citing *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)).

Fundamental to the Fourth amendment is that it protects the rights of the people against conduct by the *government*, not private individuals. *See United States v. Richardson*, 607 F.3d 357, 364 (4th Cir. 2010); *United States v. Bonds*, No. 521CR00043KDBDCK, 2021 WL 4782270,

---

[1] Throughout his pleadings and at the Status Conference the Defendant has asserted that Courtney Martin's involvement was not timely disclosed. *See* Doc. Nos. 41, 45. However, the Motion does not assert that argument as a basis for suppression. *See* Doc. No. 45 ( "The grounds for the Defendant's motion are…[t]he omissions and inaccuracies in search warrant affidavit…[and the] illegal extrajudicial investigation by an employee of the FBI.") Accordingly, the Court need not address Defendant's "late disclosure" argument. Still, various FBI reports made clear the initial information came from an FBI employee. *See* Doc. Nos. 41-4, 41-7. In fact, one specially names Courtney Martin as the source of a USB drive. Doc. No. 41-7. Additionally, the United States did not interview Courtney Martin until April 10, 2023, and no evidence has been proffered that the United States was aware of the extent of her involvement before that date. Further, the United States has represented that it does not intend offer any testimony by Courtney Martin at trial.

4

at *2 (W.D.N.C. Oct. 13, 2021). That said, if a private individual is "acting as an agent of the Government or with the participation or knowledge of any governmental official" his actions will be considered government action. *United States v. Ellyson*, 326 F.3d 522, 527–28 (4th Cir. 2003); *see also Coolidge v. New Hampshire*, 403 U.S. 443, 487 (1971) (explaining that a private search may be converted into state action only if the private actor is "regarded as having acted as an 'instrument' or agent of the state"). "The burden of proving that a private party acted as an agent or instrument of the government is on the defendant." *Ellyson*, 326 F.3d at 527 (citing *United States v. Shahid*, 117 F.3d 322, 325 (7th Cir. 1997)). "Whether an agency relationship exists is a fact-intensive inquiry that is guided by common law agency principles." *Id*. (citing *United States v. Koenig*, 856 F.2d 843, 847 n. 1 (7th Cir. 1988)). As a result, the question before this Court is whether Courtney Martin was acting as an agent of the United States when she assisted her sister in the collection of evidence.

In determining whether an agency relationship existed between Courtney Martin and the FBI, this Court must consider: (i) "whether the government knew of and acquiesced in the intrusive conduct" and (ii) "whether the private party's purpose for conducting the search was to assist law enforcement efforts or to further her own ends." *Ellyson*, 326 F.3d at 527 (citations omitted); *United States v. Kinney*, 953 F.2d 863, 865 (4th Cir.1992). Here, there is no evidence that the FBI was aware of or acquiesced in Courtney Martin's conduct. On the contrary, the facts establish that this was purely an internal family matter until Kimberly Tatum's divorce attorney recommended that law enforcement be contacted.

The Defendant has failed to produce any communications between Courtney Martin and her colleagues at the FBI before September 22, 2021. Rather, the Defendant asks this Court to infer the FBI's knowledge because Courtney Martin was employed by the FBI. Yet mere employment

5

is insufficient. An individual's employment with a governmental entity does not automatically transform private action into government action. Furthermore, the record reflects that Courtney Martin's concern was the well-being of her sister during a marital crisis. There is no support for the conclusion that her motive was to help the FBI build a case against the Defendant. The Defendant has therefore failed to meet his burden of establishing an agency relationship between Courtney Martin and the FBI. Thus, the Fourth Amendment is inapplicable to Courtney Martin's conduct and the Motion will be denied as to that argument.[2]

b) Franks Hearing

A Franks hearing provides a criminal defendant with a "narrow way to attack the validity" of a search-warrant affidavit. *United States v. Moody*, 931 F.3d 366, 370 (4th Cir. 2019). Along with affirmative false statements, "Franks protects against omissions that are designed to mislead, or that are made in reckless disregard of whether they would mislead, the magistrate." *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990) (emphasis omitted).

To obtain a *Franks* hearing, a defendant must make a "substantial preliminary showing" to overcome the "presumption of validity with respect to the affidavit supporting the search warrant." *Moody*, 931 F.3d at 370; *see also Franks*, 438 U.S. at 171 (defendant's "attack must be more than conclusory and must be supported by more than a mere desire to cross-examine"). A defendant must provide a substantial preliminary showing that (1) law enforcement made an omission; (2) law enforcement made the omission "knowingly and intentionally, or with reckless disregard for

---

[2] The Defendant's "extrajudicial search" argument suffers from a more fundamental flaw than the lack of an agency relationship. Courtney Martin did not perform a search of the Defendant's electronic devices. Kimberly Tatum was the one who made the recordings and collected the evidence. Courtney Martin merely held onto the USB drive, organized the information on the USB drive, and turned over the USB drive to the FBI. *See* Doc. No. 41-3. Accordingly, she had no role in the actual collection of evidence.

the truth," and (3) the inclusion of the omitted evidence in the affidavit would have defeated its probable cause. *Colkley*, 899 F.2d at 300-01. If a district court finds that a defendant has made this threshold showing, it must hold a *Franks* hearing to develop evidence on the affidavit's veracity. *Id.* at 301. If after the hearing the defendant establishes "perjury or reckless disregard" by a preponderance of the evidence and shows that the inclusion of the omitted evidence would defeat the probable cause in the affidavit, "the search warrant must be voided, and the fruits of the search excluded." *Franks*, 438 U.S. at 156; *see also Colkley*, 899 F.2d at 300-01.

The Defendant has failed to make the required substantial preliminary showing. First, there is no evidence that Courtney Martin's involvement was omitted with the "intent to mislead, or . . . with reckless disregard for whether the statements would mislead, the magistrate." *Moody*, 931 F.3d at 371. The mere fact that it was omitted is insufficient. *See United States v. Clenney*, 631 F.3d 658, 664 (4th Cir. 2011). The Defendant must provide facts, not mere conclusory allegations, indicating that Agent Atwood subjectively acted with intent to mislead the magistrate. There are no such facts here. In fact, there is no evidence Agent Atwood even knew the extent of Courtney Martin's involvement when he applied for the search warrant. The United States did not interview Courtney Martin until sometime in April 2023. *See* Doc. No. 44. Absent knowledge of Courtney Martin's involvement, Agent Atwood could not have omitted it with the intent to mislead the Magistrate.

Second, the information related to Courtney Martin is immaterial. Courts assess materiality by inserting the omitted facts into the warrant affidavit, examining the information contained within the "revised" affidavit, and evaluating whether there still would have been probable cause to issue the warrant. *United States v. Jones*, 942 F.3d 634, 640 (4th Cir. 2017) If the revised affidavit still establishes probable cause, the defendant is not entitled to a *Franks* hearing. *Id.* The

affidavit submitted by Agent Atwood supports a finding of probable cause, even with the inclusion of Courtney Martin's involvement. The affidavit details Agent Atwood's review of child pornography on a flash drive provided by Kimberly Tatum and the Defendant's admission that he used a deepfake website to create a nude photograph of a minor ex-girlfriend. *See* Doc. No. 41-1, p. ¶ 20. This is more than enough to meet the low bar of probable cause. *See District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018). Moreover, Courtney Martin's role appears to have been wholly clerical and presumably irrelevant to the substance of the information. The inclusion of Courtney Martin's role, if anything, might strengthen a probable cause finding. The Defendant's argument that the inclusion of this information defeats probable cause hinges on the assumption that Courtney Martin's conduct was in some way improper. Having already found that Courtney Martin's conduct was not government action but the actions of a concerned sister, there is nothing improper about them. As a result, the fact that an individual known to the FBI — and presumably trusted — participated in the collection of evidence, if anything, may minimally increase the reliability of the evidence. In sum, the Defendant has failed to meet either prong of *Franks* and therefore is not entitled to a *Franks* hearing.

**IT IS THEREFORE ORDERED THAT** the Defendant's Motion to Suppress and Request for a *Franks* hearing, (Doc. No. 41), is **DENIED**.

**SO ORDERED.**

Signed: May 1, 2023

Kenneth D. Bell
United States District Judge